**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

SECURITIES AND EXCHANGE COMMISSION,

               Plaintiff,

v.                                             Civil Action No. _____

DONALD J. LESTER,
RUBICON ALLIANCE, LLC,
CFI FUND, LLC, and
NUPOWER, LLC,

               Defendants,

EQUITY EDGE PREFERRED INCOME FUND I, LLC,
EQUITY EDGE, LLC, and
EQUITY EDGE COMPANIES, LLC,

               Relief Defendants.

## COMPLAINT

The United States Securities and Exchange Commission (the "Commission") alleges as follows:

### SUMMARY

1.      This case involves a fraudulent scheme orchestrated by Donald J. Lester ("Lester") and his self-described "private equity firm" Rubicon Alliance, LLC ("Rubicon"), whereby Lester used investor money from the CFI Fund, LLC ("CFI"), an investment fund Rubicon owned and managed, to prop up Equity Edge, a group of affiliated and failing companies also owned and managed by Rubicon. Specifically, Lester caused Rubicon to transfer its ownership of NuPower, LLC ("NuPower"), a company with no cash-flow producing assets, to Equity Edge in exchange for no money. Lester then caused CFI to purchase 50% of NuPower from Equity Edge for $2.8 million, a price determined unilaterally by him. Lester and Rubicon

then used the $2.8 million of CFI investor funds to pay amounts owed to Equity Edge investors and to pay Rubicon fees to manage Equity Edge.  In this manner, Lester and Rubicon fraudulently diverted funds from CFI to pay back investors in its failing fund, Equity Edge. Lester and Rubicon did this without disclosing the inherent conflicts of interest implicated by favoring one fund over another, or the multiple financial benefits to Lester and Rubicon.  As a result, this transaction operated as a fraud and deceit upon CFI and its investors.

2.      From approximately 2002 through 2009, Lester and Equity Edge sold securities to numerous investors in unregistered transactions for the purpose of purchasing mobile homes or notes secured by mobile homes.  The investment was not successful, was the subject of litigation, and resulted in sanctions against Lester as described below.  Consequently, Equity Edge struggled to repay its investors, Equity Edge's ownership and management was transferred to Rubicon, and Rubicon agreed to "guarantee" Equity Edge's performance.

3.      In 2010, Lester and Rubicon created two new investment funds, CFI and NuPower.  CFI was formed "for the purpose of investing in a variety of cash flow-producing assets," while NuPower was formed for the sole purpose of investing in a start-up renewable energy company with no operating history or revenues ("Company A").  From approximately January 2010 through December 2014, Lester and Rubicon raised approximately $10.5 million through the sale of securities in CFI and NuPower.

4.      Lester devised the scheme to transfer Rubicon's interest in NuPower to Equity Edge for no money, and then sell 50% of the interest in NuPower to CFI for $2.8 million, in order to use CFI investor funds to satisfy the Equity Edge obligations.  Rubicon and Lester concealed from CFI investors the sale of NuPower to CFI and the inherent actual and potential conflicts of interest implicated by favoring one fund they managed (Equity Edge) over another

(CFI).  CFI's purchase of NuPower was also directly contrary to representations in the CFI offering memorandum, including that any related party transactions "will be conducted on an arms-length, fair market value basis" and that CFI will invest in "cash flow-producing assets." Lester, who has no training in valuation, determined the price of the transaction himself without consulting any third party or following any accepted valuation methodology.  Moreover, because NuPower's only investment was Company A, a development stage company with no revenues or operating history, the asset was not "cash flow-producing."

5.      In addition to the fraud perpetrated on CFI and its investors, Lester's and Rubicon's offerings of  CFI and NuPower investments violated several registration provisions of federal securities laws.  Both the CFI and NuPower offerings were unregistered and not subject to any applicable exemption.  Also, CFI and NuPower acted as investment companies without registering with the Commission.  Finally, Rubicon and Lester effectuated transactions in securities without registering with the Commission as a broker or associating with a registered broker.

6.      As more fully outlined herein, Lester, Rubicon, CFI, and NuPower directly or indirectly engaged in transactions, acts, or courses of business that constitute violations of Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c)] and Section 7(a) of the Investment Company Act of 1940 ("Investment Company Act") [15 U.S.C. § 80a-7(a)]; Lester, Rubicon, and CFI directly or indirectly engaged in transactions, acts or courses of business that constitute violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)(2)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]; Rubicon and Lester directly or indirectly engaged in transactions, acts or courses of business that constitute

violations of Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8 thereunder [15 U.S.C. § 80b-6(1), (2), and (4) and 17 C.F.R. § 275.206(4)-8].

7.      As a result of their misconduct, which was done knowingly, recklessly, and negligently, defendants Lester, Rubicon, CFI, and NuPower violated, or aided and abetted violations of, numerous provisions of federal securities laws.  Unless Defendants are restrained and enjoined, they will continue to engage in the transactions, acts, practices, and courses of business set forth in this Complaint, and will continue to violate federal securities laws.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], Sections 209 and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9 and 80b-14], and Sections 42 and 44 of the Investment Company Act of 1940 ("Investment Company Act") [15 U.S.C. §§ 80a-41, 43].

9.      Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, the means and instrumentalities of interstate commerce, or of the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

10.      Venue lies in this Court pursuant to Section 22(a) of the Securities Act, Section 27(a) of the Exchange Act, Section 214 of the Advisers Act, and Section 44 of the Investment Company Act.   Defendants reside within this district and many of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the District of

Colorado.

**DEFENDANTS**

11.     **Rubicon** is a Colorado limited liability company with its principal place of business in Colorado Springs, Colorado.  Rubicon was formed for the general purpose of managing alternative investments, which include CFI, NuPower, and Equity Edge.  At all times relevant to this Complaint, Rubicon has exercised control over the management, general operations, and policies of CFI and NuPower, as well as the activities upon which CFI's and NuPower's violations of the federal securities laws are based.  Rubicon is not registered with the Commission in any capacity.

12.     **Donald J. Lester** is a resident of Colorado Springs, Colorado.  From 2010 to present, Lester has acted as a manager of Rubicon.  Lester is an owner of Rubicon and entitled to profit distributions.  At all relevant times, Lester has exercised control over the management, general operations, and policies of Rubicon, including those activities upon which Rubicon's violations of the federal securities laws are based.  Lester is also an insurance salesman.  Rubicon provides Lester with free office space and administrative resources to operate his insurance business.  Lester is not registered with the Commission in any capacity and is not associated with any entity registered with the Commission.  In January 2006, the Colorado Division of Securities filed a lawsuit against Lester and others related to Equity Edge, alleging fraud and the sale of securities in unregistered offerings.  *See Joseph v. Equity Edge, LLC et. al*, No. 06CV492 (Colo. Dist. Ct., Jan. 19, 2006).  On June 24, 2009, the court entered a permanent injunction against Lester for selling securities in unregistered offerings.  In connection with the litigation against Equity Edge, on September 5, 2006, the Colorado Division of Securities entered an order against Lester, denying his application for a Colorado investment adviser license and prohibiting him

from reapplying unless and until he fully repays all Equity Edge investors.  *See In the Matter of Spiranac Corporation, et al.,* No. XY2006-001 (Colo. Div. Securities, Sept. 5, 2006).

13.     **CFI** is a Colorado limited liability company with its principal place of business in Colorado Springs, Colorado.  At all relevant times, Rubicon was the sole manager and 100% owner of CFI.  CFI has no employees or board of directors.  CFI, a pooled investment vehicle, is and holds itself out to be engaged in the business of investing in securities.  Between approximately January 2010 and December 2014, CFI issued securities in the form of promissory notes to at least 46 investors in several states for approximately $5.1 million.  Neither CFI nor its securities are registered with the Commission.  No registration statement has been filed or is in effect as to CFI's securities.

14.     **NuPower** is a Colorado limited liability company with its principal place of business in Colorado Springs, Colorado.  At all relevant times, Rubicon managed NuPower and owned 100% of the company upon its creation.  NuPower has no employees or board of directors.  NuPower is and holds itself out to be engaged in the business of investing in securities.  Between approximately July 2010 and July 2014, NuPower sold 135 "units," in the form of promissory notes and equity, to at least 67 investors in several states for $5.4 million.  NuPower is solely invested in the securities of Company A, a start-up renewable energy company with no operating history or revenues.  Neither NuPower nor its securities are registered with the Commission.  No registration statement has been filed or is in effect as to NuPower's securities.

**RELIEF DEFENDANTS**

15.     **Equity Edge** is a group of affiliated Colorado limited liability companies controlled by Rubicon that includes Equity Edge Preferred Income Fund I, LLC; Equity Edge,

LLC; and Equity Edge Companies, LLC.  Their principal places of business are in Colorado Springs, Colorado.  At all relevant times, Rubicon owned and managed Equity Edge and owed it a continuing guarantee such that the financial resources of Rubicon, and indirectly its owners, including Lester, could be called upon to satisfy liabilities related to Equity Edge.  As discussed below, Equity Edge received $2.8 million in proceeds from a fraudulent transaction involving CFI.

16.     A chart of the relevant entities and their relationship to each other is set forth below:



**FACTS**

**Rubicon's Business and Structure**

17.     Rubicon was formed in May 2006.  The CFI and NuPower offering memos, described more fully below, represent Rubicon to be a "private equity firm."  According to its

publicly-accessible website, Rubicon "identifies, evaluates, develops, and manages alternative investment[s.]"  The website states that Rubicon's "discerning" clients have the opportunity to invest in and benefit from these "alternative investment opportunities."

18.     Lester is Rubicon's sole Manager, with authority to act on behalf of Rubicon. Lester is responsible for Rubicon's day-to-day operations and exercises control over Rubicon's management of CFI and NuPower.

19.     The CFI and NuPower offerings, described more fully below, were created, marketed, and managed by Rubicon, and, as a result, Lester.  Rubicon and Lester participated in the offerings at key points, acting as intermediaries between investors and the funds.

20.     To obtain investors in CFI and NuPower, Lester targeted clients from his own insurance practice, and received referrals from others.  After targeting potential investors, Lester arranged in-person meetings where he recommended an investment in CFI and/or NuPower and provided copies of the offering memoranda.

21.     Lester personally participated in the drafting, review, and approval of the CFI and NuPower offering memoranda.

22.     Many of the CFI and NuPower investors were retirees and Lester often suggested they use IRA funds to invest.  After Lester successfully persuaded someone to invest in CFI and/or NuPower, Rubicon administrative personnel (supervised by Lester) received and handled investor funds, along with related documentation such as subscription agreements and promissory notes, and helped investors to establish self-directed IRAs.

23.     As Rubicon's manager, Lester executed NuPower and CFI subscription agreements and promissory notes.

**The CFI Offering**

24.     Between approximately January 2010 and December 2014, Rubicon, controlled by Lester, sold approximately $5.1 million in CFI promissory notes to at least 46 investors residing in several states, including Colorado.  In connection with this offering, CFI prepared and distributed to investors and prospective investors a CFI offering memorandum, which refers to CFI investments as a "[s]ecurity…in the form of a Promissory Note issued by the Fund."  The notes bear interest at 7%, paid periodically or in a lump sum upon maturity, and have maturity dates of at least five years.  Rubicon retained 100% ownership of CFI at all relevant times.

25.     Rubicon and Lester offered and sold CFI promissory notes to unaccredited and unsophisticated investors.  CFI investors were not, and have never been, provided with any CFI financial statement.

26.     According to its offering memorandum, CFI was "formed for the purpose of investing in a variety of cash-flow producing assets" and "will use the net proceeds from [the] Offering" for the purposes of making these investments.  The offering memorandum does not disclose CFI's specific investments, stating that "the manager [Rubicon] has not identified a particular operating business in which to invest."

27.     The CFI offering memorandum states that while it "may do business" with companies affiliated with Rubicon, "[a]ny transaction between [CFI] and any Affiliate will be conducted on an arms-length basis, at fair market value."

28.     The CFI offering memo was not updated to include disclosure of CFI's actual investments despite the solicitation of investments continuing for more than four years after CFI "invested" in NuPower.

29.     Rubicon manages CFI and is vested with the sole authority to oversee its investments.  Investors have no right to participate in the management of CFI, leaving Rubicon and its manager, Lester, with control over investment decisions.  Through Lester, Rubicon determines what securities CFI purchases and at what price.

30.     Rubicon profits from its management of CFI in several ways.   First, the CFI offering memorandum states that up to 10% of investor funds may be used "to pay fees, salaries or other compensation to the Manager [Rubicon] and/or its officers."

31.     Second, Rubicon may also receive compensation from CFI based on its 100% ownership interest of the fund.  If CFI generates a return of greater than 7% (i.e., obtains more money than the interest it owes investors), Rubicon profits.

32.     Third, Rubicon obtained compensation, as described more fully below, through the diversion of CFI funds to Equity Edge.  As Rubicon transferred CFI investor funds to Equity Edge for the purchase of a 50% interest in NuPower, Rubicon caused a certain amount of those funds to be paid to itself in the form of management fees.

### The NuPower Offering

33.     Between approximately July 2010 and July 2014, Rubicon, controlled by Lester, sold 135 NuPower "units" to at least 67 investors residing in several states for $5.4 million. Each unit consisted of a $37,500 promissory note that matured on June 30, 2016 and earned 6% interest, payable quarterly, and equity, in the form of a .25% membership interest in NuPower purchased for $2,500.  In connection with this offering, NuPower prepared and distributed to prospective investors between approximately July 2010 and July 2014, a NuPower offering memorandum, which refers to the investments as "[s]ecurities…in the form of a Promissory Note

issued by the Company for the Debt Investment in the Company, and the issuance of a Membership Interest in the Company for the Equity Investment in the Company."

34.     Rubicon managed and owned 100% of NuPower before transferring its entire interest to Equity Edge, which then sold a 50% NuPower interest to CFI.

35.     NuPower and Lester offered and sold NuPower securities to unaccredited and unsophisticated investors.  NuPower investors were not, and have never been, provided with any NuPower financial statements.

36.     According to its offering memorandum, NuPower was "formed for the sole purpose of investment in" Company A.  Pursuant to the offering memorandum, NuPower used the $37,500 in principal received for each promissory note to buy securities in Company A in the form of preferred shares.  In return, Company A owed to NuPower a 9% annual dividend on the shares, payable quarterly, in cash.  As Rubicon's manager, Lester led the negotiations with Company A and executed the preferred share purchase agreement between NuPower and Company A.

37.     Rubicon profits from its management of NuPower in several ways.  First, the NuPower offering memorandum sets forth Rubicon's right to use the $2,500 "equity" investment for Rubicon's management fees and expenses.  Second, Rubicon reserved the right to take as management fees and expenses the 3% difference between the Company A dividend rate of 9% and the NuPower promissory note interest rate of 6%.

38.     From the above sources, NuPower paid approximately $344,000 to Rubicon for management fees and expenses between approximately July 2010 and December 2014.  Lester determined the amounts NuPower paid to Rubicon.

39.     Rubicon also received commissions from Company A.  Pursuant to a commission agreement dated July 1, 2010, Company A agreed to pay Rubicon 4% of the total amount NuPower invested in Company A each month, capped at $10,000 per month.  In addition to this 4% commission, Company A reserved an equivalent number of its common shares for Rubicon's benefit.

40.     Between approximately August 2010 and January 2012, Company A paid to Rubicon over $137,000 in commissions and reserved 485,625 shares of common stock for Rubicon's benefit.  Company A owes Rubicon an additional $57,000 in commissions pursuant to the commission agreement.

41.     As Rubicon's manager, Lester negotiated and executed the commission agreement.

**Lester and Rubicon Orchestrate a Fraudulent Scheme to Prop Up Equity Edge**

42.     During the litigation brought by the Colorado Division of Securities relating to Equity Edge, Rubicon entered into a "Continuing Guarantee Agreement" in favor of Equity Edge's investors.  Under the continuing guarantee, Rubicon agreed to guarantee Equity Edge's performance such that Rubicon's financial resources could be called upon to satisfy Equity Edge's liabilities to investors.

43.     In or around 2010, Equity Edge generated insufficient revenue to pay both its operational expenses and interest owed to investors.

44.     Equity Edge's insufficient revenue created two significant issues.  First, because Rubicon owed a continuing guarantee to Equity Edge investors, the financial resources of Rubicon could have been called upon to satisfy any shortfall.  Second, without a cash infusion, Equity Edge was unable to pay management fees to Rubicon while also meeting its obligations

to investors.  In order to solve these problems, Lester and Rubicon devised a fraudulent scheme to prop up Equity Edge by directing cash from CFI to Equity Edge.

45.     On or about October 15, 2010, shortly after NuPower was formed in or around July 2010, Lester caused Rubicon to transfer its 100% ownership of NuPower to Equity Edge for no consideration.

46.     Shortly thereafter, on or about October 26, 2010, Lester caused CFI to buy from Equity Edge a 50% interest in NuPower (an interest Equity Edge paid nothing for) for $2.8 million.  Lester unilaterally determined the purchase price.

47.     Lester, as Rubicon's manager, executed all of the resolutions and agreements related to Rubicon's transfer of NuPower to Equity Edge and Equity Edge's subsequent sale of NuPower to CFI.

48.     As of October 2010, CFI did not have $2.8 million in cash to purchase its 50% interest in NuPower from Equity Edge.  In order to effectuate the sale, between approximately October 2010 and February 2014, Rubicon caused CFI to pay $2.8 million to Equity Edge by making periodic wire transfers.

49.     CFI made these periodic payments in part using funds raised from new investors. Thus, as Lester and Rubicon raised new money for CFI, some of those same monies were used to pay Equity Edge for its acquisition of NuPower.  In turn, Equity Edge used the $2.8 million for various purposes, including to pay Equity Edge investors and to pay Rubicon fees for the management of Equity Edge.

50.     Rubicon's financial records show at least 16 instances (totaling approximately $430,000) where, on the same day that Rubicon caused CFI to transfer money to Equity Edge, Rubicon caused Equity Edge to make a fee payment to Rubicon.

51.     Absent obtaining funds from CFI investors, Equity Edge was not capable of making fee payments to Rubicon, while also making return distributions to its investors.

52.     Lester effectuated the transfer and sale of NuPower in order to improperly move funds from CFI to Equity Edge to prop up the failing company.  This presented a clear conflict of interest for Rubicon given that Equity Edge was failing, that Rubicon owed a continuing guarantee to Equity Edge and to its investors, and that the cash infusion from the sale of NuPower to CFI enabled Equity Edge to have enough resources to pay management fees to Rubicon.  Additionally, Rubicon made representations to CFI investors that CFI would invest in cash flow producing assets.

53.     The transfer and sale of NuPower also presented a clear conflict of interest for Lester, who, as an owner of Rubicon was entitled to profit distributions.  Lester also had a personal interest in the transfer and sale of NuPower because he is barred from reapplying to be an investment adviser with the state of Colorado unless and until Equity Edge investors are repaid.

54.     Despite the conflicts of interest inherent in the transfer and sale of NuPower, Lester did not consult with any third party prior to completing the transaction.  Moreover, no disclosure of the transaction was made to CFI, any current or prospective CFI investor, or anyone acting on behalf of CFI's current or prospective investors.

55.     The failure to disclose the transfer and sale of NuPower and the conflicts it created constituted a breach of the fiduciary duties owed by Rubicon and Lester to CFI investors.

56.     In light of the all of the facts above concerning the transfer and sale of NuPower, Lester and Rubicon knew, were reckless in not knowing, and were negligent in not knowing that

the transfer and sale was improper and undisclosed.  The acts described above are acts in furtherance of the fraudulent scheme.

### Rubicon Makes Payments to Early-Stage CFI Investors from Later Investments

57.     Rubicon and Lester also engaged in a fraudulent scheme to make interest payments to early-stage CFI investors from later investments, contrary to the language of the CFI offering memorandum.

58.     As of the date of this Complaint, nearly five years after its $2.8 million "investment" in NuPower, CFI has not received any cash from NuPower.

59.     CFI's revenue from other sources has been insufficient to pay investors their promised returns.  As a result, CFI has made interest payments under the promissory notes not with revenues from "cash flow-producing assets" as described in the offering memorandum, but rather with new investor funds.

60.     For example, on July 1, 2012, CFI's cash account balance was less than $5,000 before receiving $40,000 in new investor funds.  Of that $40,000, $10,000 was used to pay interest to early CFI investors, and the remaining amount was paid to Equity Edge for CFI's purchase of NuPower.

61.     Similarly, on July 1, 2013, CFI's account balance was less than $6,000 before receiving $20,000 in new investor funds.  Again, that new investor money was used to pay interest to early-stage CFI investors and to pay Equity Edge.

62.     CFI's bank records reflect dozens of other instances, totaling over $300,000 in payments, where interest to earlier investors was paid out of new investor funds.

63.     At least 93 interest payments, totaling over $230,000 in interest, are currently past due to CFI investors.

64.     As of the date of this Complaint, CFI is behind on interest payments and has no apparent means to pay back investors' principal.

65.     In light of the all of the facts above concerning Rubicon's payments to early-stage CFI investors from later investments, Lester and Rubicon knew, were reckless in not knowing, and were negligent in not knowing that the payments were improper and undisclosed.  The acts described above are acts in furtherance of the fraudulent scheme.

**CFI Offering Memorandum Contained Materially False and Misleading Statements**

66.     The CFI offering memorandum was distributed between approximately January 2010 and December 2014 to dozens of prospective investors, some of whom ultimately invested. The CFI offering memorandum contained material false and misleading statements.

67.     First, the CFI offering memorandum represented that Rubicon had "not identified a particular operating business in which to invest."  This was false because by approximately October 26, 2010, CFI had purchased from Equity Edge a 50% "investment" in NuPower for $2.8 million.

68.     In light of their roles in making the NuPower investment, Lester, Rubicon and CFI knew, were reckless in not knowing, and were negligent in not knowing that the representation identified in paragraph 67 was false or misleading.  As the manager of Rubicon, which managed CFI, Lester's knowledge related to the false and misleading statements is imputed to Rubicon and CFI.  The representation was also material because a reasonable investor would have considered the identification of the actual CFI "investment," NuPower, to be important in making his or her investment decision.

69.     Second, the CFI offering memorandum represented that CFI would invest in "cash flow-producing assets."  This was false because by approximately October 26, 2010, CFI had purchased from Equity Edge a 50% "investment" in NuPower, which held only one asset: an investment in Company A, a development stage company with no revenues or operating history. Neither NuPower nor Company A was a "cash flow-producing asset."

70.     In addition, new CFI investor funds were frequently used to make payments to early stage investors rather than to make investments in "cash flow-producing assets."  Rubicon and Lester were aware of CFI's payments to earlier investors using new investor funds.  Lester made and oversaw all of CFI's investments, had access to and signatory authority over CFI's bank account, was aware of CFI's cash flows, and authorized CFI interest payments.

71.     In light of their involvement with Company A and NuPower, Lester, Rubicon and CFI knew, were reckless in not knowing, and were negligent in not knowing that the representation identified in paragraph 69 was false or misleading.  As the manager of Rubicon, which managed CFI, Lester's knowledge related to the false and misleading statements is imputed to Rubicon and CFI.  The representation was also material because a reasonable investor would have considered CFI's use of new investor funds to pay earlier investors, or CFI's "investment" in NuPower, a non cash flow-producing asset, to be important in making his or her investment decision.

72.     Third, the CFI offering memorandum represented that "[a]ny transaction between [CFI] and any Affiliate will be conducted on an arms-length basis, at fair market value."  This was false because on or about October 26, 2010, Lester and Rubicon effectuated the sale of a 50% interest in NuPower from affiliate Equity Edge to affiliate CFI.  The sale was neither on an

arms-length basis, nor at a fair market value.  Rather, the price was simply unilaterally set by Lester.

73.     Rather than obtain an independent, third-party valuation, Lester, who has no education or training in business valuation techniques, unilaterally determined the price based on back-of-the-envelope calculations and erroneous personal beliefs regarding Company A's possible success, which did not follow any accepted valuation methodology.

74.     Lester did not obtain an independent, third-party valuation for the interest in NuPower, nor did he even discuss the valuation of the intended transaction with anyone else affiliated with Rubicon prior to effectuating the transaction.

75.     Lester and Rubicon failed to disclose the inherent actual and potential conflicts of interest implicated by favoring one fund they managed (Equity Edge) over another (CFI), which resulted in Equity Edge receiving $2.8 million from CFI and Rubicon receiving fees from Equity Edge.

76.     In light of his having actually set the price for the interest in NuPower sold to CFI, Lester, Rubicon and CFI knew, were reckless in not knowing, and were negligent in not knowing that the representation that "[a]ny transaction between [CFI] and any Affiliate will be conducted on an arms-length basis, at fair market value" was false or misleading.  As the manager of Rubicon, which managed CFI, Lester's knowledge related to the false and misleading statements is imputed to Rubicon and CFI.  The representation was also material because a reasonable investor would have considered the existence and pricing of the NuPower transaction to be important in making his or her investment decision.

77.     At all times, Lester, Rubicon, and CFI acted with the requisite scienter.

## Lester and Rubicon Engaged in a Scheme to Defraud

78.      As detailed above, Lester and Rubicon engaged in deceptive acts and a course of business that operated as a fraud or deceit.  Rubicon and Lester engaged in the following acts in furtherance of the fraudulent scheme:

a.      Lester and Rubicon engaged in a scheme to prop up Equity Edge, which was failing, by using a faulty valuation method to create a faulty valuation for NuPower, and then transferring $2.8 million of CFI investor funds to Equity Edge for the purchase of a 50% interest in NuPower; and

b.      Lester and Rubicon engaged in a scheme by soliciting new investments for CFI, while they knew, or were reckless in not knowing, that the investment in NuPower was contrary to CFI's stated investment strategy, and that new investor funds were used to pay interest to earlier stage investors.

79.      Lester's and Rubicon's acts operated as a fraud or deceit upon CFI investors and CFI itself.  Because Lester and Rubicon had a conflict of interest with CFI, CFI could not meaningfully consent to the transaction.  Rubicon and Lester cannot be presumed to communicate their knowledge to CFI when they are acting against CFI's interests.

## Lester is a Control Person of Rubicon

80.      Lester is Rubicon's sole Manager, with contractual authority to act on behalf of Rubicon.   Lester is responsible for Rubicon's day-to-day operations and exercises control over Rubicon and its management of CFI and NuPower.

81.      Lester solely handled the negotiations with Company A that led to NuPower's creation and executed the operative transactional documents.  Lester also solely negotiated and executed, on Rubicon's behalf, the commission agreement with Company A.  Similarly, when

the NuPower investment was restructured in 2013, Lester again solely handled the negotiations and executed the relevant agreements.

82.     With respect to the self-dealing CFI transaction, Lester, as Rubicon's manager, executed all of the agreements related to Rubicon's transfer of NuPower to Equity Edge in exchange for no consideration, and related to Equity Edge's subsequent sale of NuPower to CFI. Lester also solely determined the purchase price of NuPower, without consulting with any other Rubicon members about the valuation.

83.     With respect to both the CFI and NuPower offerings, Lester took the lead in identifying and soliciting investors, supervised Rubicon personnel who handled investor funds, and executed CFI and NuPower subscription agreements and promissory notes as Rubicon's manager.

### The Stock Offerings by CFI and NuPower Were Not Registered with the SEC or Exempt from Registration

84.     From approximately January 2010 through December 2014, Lester, Rubicon, and CFI offered and sold securities of CFI.  During that time, no registration statement was filed or in effect for the transactions.  CFI raised approximately $5.1 million from at least 46 investors.

85.     From approximately July 2010 through July 2014, Lester, Rubicon, and NuPower offered and sold securities of NuPower.  During that time, no registration statement was filed or in effect for the transactions.  NuPower raised approximately $5.4 million from at least 67 investors.

86.     Lester and Rubicon were necessary participants and substantial factors in CFI's and NuPower's offers and sales.  Among other things, Lester and Rubicon made the decision to offer CFI and NuPower securities to public investors.  In addition, Lester personally participated

in the drafting, review and approval of the offering materials for both CFI and NuPower, and provided information to investors about investments in CFI and NuPower.

87.     Lester, Rubicon, CFI and NuPower offered and sold stock to investors using the means or instruments of interstate commerce including but not limited to telephones, the Internet, and the mails.

88.     Lester, Rubicon, CFI and NuPower offered and sold securities in CFI and NuPower to some unaccredited and unsophisticated investors.  Neither Lester, Rubicion, CFI nor NuPower had a reasonable basis to believe that all of the investors in CFI and NuPower were accredited or sophisticated.

89.     In the respective offerings of CFI and NuPower, Lester, Rubicon, CFI and NuPower failed to provide investors with the information required under Rule 502(b) of Regulation D [17 C.F.R. § 230.502(b)], including an audited balance sheet.

**Defendants Lester and Rubicon Acted As Unregistered Brokers**

90.     Section 3(a)(4) of the Exchange Act defines a "broker" as any person who is engaged in the business of effecting transactions in securities for the account of others.  Section 15(a)(1) of the Exchange Act prohibits a broker or dealer from using jurisdictional means such as the telephone or mails to effect transactions in securities unless the broker or dealer is registered with the SEC.

91.     Lester and Rubicon used the telephone and the mails to effect purchases and sales of securities in CFI and NuPower.  Neither Lester nor Rubicon was affiliated with a broker-dealer registered with the SEC during the time in which they sold CFI and NuPower securities to investors.

92.     Lester and Rubicon actively solicited investors to purchase securities in CFI and NuPower via telephone calls and meetings with investors, as well as other means.

93.     In addition, Lester and Rubicon participated in CFI and NuPower securities transactions at key points in the chain of distribution, by, among other things, personally soliciting investors to purchase CFI and NuPower promissory notes, creating promissory notes distributed to investors, receiving investors' funds and preparing written offering materials. Rubicon (owned in part by Lester) received compensation based indirectly on the transactions in securities they offered because of the commission agreement executed by Lester.

**CFI and NuPower Acted as Unregistered Investment Companies**

94.     As noted above, in 2010, Lester and Rubicon created two new investment funds, CFI and NuPower.  CFI was formed "for the purpose of investing in a variety of cash flow-producing assets," while NuPower was formed for the sole purpose of investing in Company A.

95.     CFI and NuPower securities were sold in public offerings to individuals who were not "qualified purchasers."

96.     CFI and NuPower were required to register as investment companies, but failed to do so.

97.     As the manager of these entities, Lester and Rubicon were responsible for ensuring that CFI and NuPower register as investment companies, yet they failed to take those necessary steps.

//

//

//

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fraud (Scheme):  Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a) and (c)]**
**(Lester and Rubicon)**

98.     The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

99.     Lester and Rubicon, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: employed devices, schemes or artifices to defraud; or engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person.

100.     By virtue of the foregoing, Lester and Rubicon, directly or indirectly, each violated, and, unless restrained and enjoined, will again violate Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder.

### SECOND CLAIM FOR RELIEF
**Fraud (Scheme):  Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)]**
**(Rubicon and Lester)**

101.     The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

102.     Rubicon and Lester, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, acting with the requisite state of mind, employed a device, scheme or artifice to defraud and engaged in transactions, practices, or a course of business which operated or would operate as a fraud or deceit upon purchasers.

103.     By virtue of the foregoing, Rubicon and Lester, directly or indirectly, violated

and, unless restrained and enjoined, will again violate Section 17(a)(1) and (3) of the Securities Act.

## THIRD CLAIM FOR RELIEF
**Fraud (Misstatements and Omissions):  Section 10(b) of the Exchange Act and Rule 10b-5(b) [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b)]
(CFI)**

104.    The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

105.    CFI, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security, made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

106.    By virtue of the foregoing, CFI, directly or indirectly, violated, and, unless restrained and enjoined, will again violate Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

## FOURTH CLAIM FOR RELIEF
**Fraud (Misstatements and Omissions):  Aiding and Abetting CFI's Violations of Section 10(b) of the Exchange Act and Rule 10b-5 [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b)]
(Lester and Rubicon)**

107.    The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

108.    CFI, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security, made untrue statements of

material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

109.    Lester and Rubicon each aided and abetted the fraud violations of CFI, in that they knowingly or recklessly provided substantial assistance to CFI in committing these violations.

110.    By virtue of the foregoing, Lester and Rubicon, directly or indirectly, each aided and abetted and, unless restrained and enjoined, will again aid and abet, CFI's violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

### FIFTH CLAIM FOR RELIEF
**Fraud (Misstatements and Omissions):  Control Person Liability Under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for CFI's Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) [15 U.S.C. §§ 78j(b) and 17 C.F.R. § 240.10b-5(b)] (Lester and Rubicon, Alternatively)**

111.    The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

112.    CFI, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security, made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

113.    Rubicon and Lester exercised control over the management, general operations, and policies of CFI, as well as the specific activities upon which CFI's violations are based.

114.    By virtue of the foregoing, Rubicon and Lester are each liable as control persons under Section 20(a) of the Exchange Act for CFI's violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

## SIXTH CLAIM FOR RELIEF
### Fraud (Misstatements and Omissions):  Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)]
### (CFI, Rubicon, and Lester)

115.     The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

116.     CFI, Rubicon, and Lester, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, acting with the requisite state of mind, obtained money or property by means of an untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

117.     By virtue of the foregoing, CFI, Rubicon, and Lester, directly or indirectly, violated and, unless restrained and enjoined, will again violate Section 17(a)(2) of the Securities Act.

## SEVENTH CLAIM FOR RELIEF
### Fraud (Misstatements and Omissions):  Aiding and Abetting CFI's Violations of Section 17(a)(2) of the Securities Act
### [15 U.S.C. § 77q(a)(2)]
### (Rubicon and Lester, Alternatively)

118.     The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

119.     CFI, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, acting with the requisite state of mind, obtained money or property by means of an untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

26

120.   Rubicon and Lester each aided and abetted the offering fraud violations of CFI, in that they knowingly or recklessly provided substantial assistance to CFI in committing these violations.

121.   By virtue of the foregoing, Rubicon and Lester, and each of them, aided and abetted and, unless restrained and enjoined, will continue to aid and abet, CFI's violations of Section 17(a)(2) of the Securities Act.

**EIGHTH CLAIM FOR RELIEF**
**Fraud:  Violations of Sections 206(1) and 206(2) of the Advisers Act**
**[15 U.S.C. § 80b-6(1) and (2)]**
**(Rubicon and Lester)**

122.   The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

123.   Rubicon and Lester, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, and while engaged in the business of advising others for compensation  as to the advisability of investing in, purchasing, or selling securities: (1) with scienter employed devises, schemes, and artifices to defraud clients or prospective clients; and (2) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon clients or prospective clients.

124.   By virtue of the foregoing, Rubicon and Lester violated and, unless restrained and enjoined, will continue to violate Sections 206(1) and (2) of the Advisers Act.

**NINTH CLAIM FOR RELIEF**
**Fraud:  Aiding and Abetting Rubicon's Violations of Section 206(1) and 206(2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)]**
**(Lester, Alternatively)**

125.   The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

126.     Rubicon, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, and while engaged in the business of advising others for compensation  as to the advisability of investing in, purchasing, or selling securities: (1) with scienter employed devises, schemes, and artifices to defraud clients or prospective clients; and (2) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon clients or prospective clients.

127.     Lester aided and abetted the investment adviser fraud violations of Rubicon, in that he knowingly or recklessly provided substantial assistance to Rubicon in committing these violations.

128.     By virtue of the foregoing, Lester aided and abetted and, unless restrained and enjoined, will continue to aid and abet, Rubicon's violations of Sections 206(1) and (2) of the Advisers Act.

### TENTH CLAIM FOR RELIEF
**Fraud:  Violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 [15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8]**
**(Rubicon and Lester)**

129.     The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

130.     Rubicon and Lester, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or of the mails, and while engaged in the business of advising others for compensation as to the advisability of investing in, purchasing, or selling securities: (a) made untrue statements of a material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in a pooled investment vehicle; and (b) engaged in acts, practices, or courses of business that were

fraudulent, deceptive, or manipulative with respect to investors or prospective investors in a pooled investment vehicle.

131.    By virtue of the foregoing, Rubicon and Lester violated and, unless restrained and enjoined, will continue to violate Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

### ELEVENTH CLAIM FOR RELIEF
**Fraud:  Aiding and Abetting Rubicon's Violations of Section 206(4) and 206(4)-8 of the Advisers Act [15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8]
(Lester, Alternatively)**

132.    The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

133.    Rubicon, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or of the mails, and while engaged in the business of advising others for compensation as to the advisability of investing in, purchasing, or selling securities: (a) made untrue statements of a material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in a pooled investment vehicle; and (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in a pooled investment vehicle.

134.    Lester aided and abetted the investment adviser fraud violations of Rubicon, in that he knowingly or recklessly provided substantial assistance to Rubicon in committing these violations.

135.    By virtue of the foregoing, Lester aided and abetted and, unless restrained and

enjoined, will continue to aid and abet, Rubicon's violations of Section 206(4) of the Advisers

Act and Rule 206(4)-8 thereunder.

### TWELFTH CLAIM FOR RELIEF
**Sale of Unregistered Securities:  Violations of Securities Act Sections 5(a) and (c) [15
U.S.C. §§ 77e(a), 77e(c)]
(All Defendants)**

136.    The Commission realleges and incorporates by reference paragraphs 1 through

97, as though fully set forth herein.

137.    Defendants, directly or indirectly, by use of the means or instrumentalities of

interstate commerce, or of the mails, in connection with the purchase or sale of a security, offered

and sold securities or carried or caused such securities to be carried through the mails or in

interstate commerce, for the purpose of sale or delivery after sale, when no registration statement

had been filed or was in effect as to such securities.

138.    By virtue of the foregoing, Defendants, directly or indirectly, violated, and unless

restrained and enjoined will again violate, Sections 5(a) and (c) of the Securities Act.

### THIRTEENTH CLAIM FOR RELIEF
**Failure to Register as an Investment Company:  Violations of Section 7(a) of the
Investment Company Act [15 U.S.C. § 80a-7(a)]
(CFI and NuPower)**

139.    The Commission realleges and incorporates by reference paragraphs 1 through

97, as though fully set forth herein.

140.    Defendants CFI and NuPower, directly or indirectly, offered for sale or delivery

after sale, by use of the mails or means or instrumentalities of interstate commerce, securities or

an interest in a security without first being registered as an investment company in accordance

with Section 7(a) of the Investment Company Act.

141.     By virtue of the foregoing, defendants CFI and NuPower, directly or indirectly, violated, and, unless restrained and enjoined, will again violate, Section 7(a) of the Investment Company Act.

## FOURTEENTH CLAIM FOR RELIEF
### Aiding and Abetting NuPower's and CFI's Violations of Section 7(a) of the Investment Company Act [15 U.S.C. § 80a-7(a)]
### (Lester and Rubicon)

142.     The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

143.     CFI and NuPower, directly or indirectly, offered for sale or delivery after sale, by use of the mails or means or instrumentalities of interstate commerce, securities or an interest in a security without first being registered as an investment company in accordance with Section 7(a) of the Investment Company Act.

144.     Lester and Rubicon each aided and abetted CFI's and NuPower's offer and sale of securities without first being registered as an investment company in accordance with Section 7(a) of the Investment Company Act, in that they knowingly or recklessly provided substantial assistance to CFI and NuPower in committing these violations.

145.     By virtue of the foregoing, Lester and Rubicon each, directly or indirectly, aided and abetted, and, unless restrained and enjoined, will continue to aid and abet, CFI's and NuPower's violations of Section 7(a) of the Investment Company Act.

## FIFTEENTH CLAIM FOR RELIEF
### Unregistered Broker:  Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(b)(1)]
### (Rubicon and Lester)

146.     The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

147.     Rubicon and Lester each, directly or indirectly, acted as a broker by using the mails or any means or instrumentality of interstate commerce to engage in the business of effecting transactions in, or inducing or attempting to induce the purchase or sale of, securities for the accounts of others without registering as a broker-dealer with the Commission or without associating with a broker-dealer registered with the Commission.

148.     By virtue of the foregoing, Lester and Rubicon each, directly or indirectly, violated, and, unless restrained and enjoined, will again violate, Section 15(a)(1) of the Exchange Act.

### SIXTEENTH CLAIM FOR RELIEF
**Control Person Liability Under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for Rubicon's Violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(b)(1)] (Lester, Alternatively)**

149.     The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

150.     Rubicon acted as a broker by using the mails or any means or instrumentality of interstate commerce to engage in the business of effecting transactions in, or inducing or attempting to induce the purchase or sale of, securities for the accounts of others without registering as a broker-dealer with the Commission or without associating with a broker-dealer registered with the Commission.

151.     Lester exercised control over the management, general operations, and policies of Rubicon, as well as the specific activities upon which Rubicon's violations are based.

152.     By virtue of the foregoing, Lester is liable as a control person under Section 20(a) of the Exchange Act for Rubicon's violations of Section 15(a)(1) of the Exchange Act and Rule 10b-5 thereunder.

## SEVENTEENTH CLAIM FOR RELIEF
### Equitable Disgorgement
### (Equity Edge)

153.    The Commission realleges and incorporates by reference paragraphs 1 through 97, as though fully set forth herein.

154.    Equity Edge received and held proceeds of Defendant's fraudulent transaction involving the transfer and sale of NuPower.

155.    Equity Edge has no legitimate claim to these illicit proceeds.

156.    Equity Edge obtained the funds under circumstances in which it is not just, equitable, or conscionable for it to retain the funds, and therefore has been unjustly enriched.

## RELIEF SOUGHT

WHEREFORE, the Plaintiff United States Securities and Exchange Commission respectfully requests that the Court:

### I.

Find that each of the Defendants committed the violations alleged in this Complaint;

### II.

Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining each of the Defendants from violating, directly or indirectly, the laws and rules alleged in this Complaint;

### III.

Order that defendants Rubicon and Lester and relief defendant Equity Edge disgorge any and all ill-gotten gains, together with pre- and post-judgment interest, derived from the improper conduct set forth in this Complaint;

### IV.

Order that Rubicon and Lester pay civil money penalties pursuant to Section 20(d) of the

Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)],

209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)], and  Section 42(e) of the Investment

Company Act [15 U.S.C. § 80a-41(e)], in an amount to be determined by the Court, plus post-

judgment interest;

## V.

Order such other relief as this Court may deem just or appropriate.

## JURY DEMAND

The Commission demands a trial by jury on all claims so triable.

Respectfully submitted October 16, 2015.

s/*Mark L. Williams*
Mark L. Williams
U.S. Securities and Exchange Commission
Denver Regional Office
1961 Stout Street, Suite 1700
Denver, CO 80294
(303) 844-1000

Attorney for Plaintiff