**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

**Case No. 1:15-cv-02301-CMA-CBS**

SECURITIES AND EXCHANGE COMMISSION,
                              Plaintiff,
v.

DONALD J. LESTER, RUBICON ALLIANCE, LLC, CFI FUND, LLC, and
NUPOWER, LLC,
                              Defendants,

EQUITY EDGE PREFERRED INCOME FUND I, LLC, EQUITY EDGE, LLC, and
EQUITY EDGE COMPANIES, LLC,
                              Relief Defendants.

---

## DEFENDANTS' AND RELIEF DEFENDANTS' MOTION TO DISMISS

The Commission's allegations are insufficient to state fourteen of its seventeen

claims alleged against Lester, Rubicon, CFI, and NuPower (collectively, "Defendants")

and the Equity Edge entities (collectively, "Relief Defendants").  The Complaint's own

allegations and established law refute the claims.  Defendants and Relief Defendants

thus move under Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6) to dismiss the Complaint.

## INTRODUCTION

Rubicon is a private equity firm that manages NuPower, CFI, and Equity Edge,

as well as a variety of other companies that are not parties to this lawsuit.  NuPower

invested in a cutting-edge renewable energy start-up company, referenced in the

Complaint as "Company A."  In exchange, Company A contractually promised to make

quarterly cash dividend payments to NuPower.  Equity Edge initially owned all of

NuPower.  To allow CFI to share in the anticipated cash flow from Company A, CFI

purchased a 50% stake in NuPower.  Unfortunately, the start-up company (and thus

NuPower) has not yet delivered the anticipated positive returns.  The Commission does not charge Company A with any wrongdoing.  Rather, it asserts seventeen claims against Defendants and Relief Defendants.  Through perplexing shotgun pleading, the Complaint alleges three categories of claims: (a) securities fraud (Claims 1-11 and Claim 17 – the only claim stated against Relief Defendants); (b) failure to register as brokers (Claims 15-16); and (c) sale of unregistered securities (Claims 12-14).

The securities fraud claims (Claims 1-11, 17) should be dismissed because they inappropriately rely on selective quotes from the detailed disclosures actually provided and on hindsight.  The broker registration claims (Claims 15-16) should be dismissed because they mischaracterize the fees due under a consulting agreement.  The unregistered securities claims (Claims 12-14) are also insufficiently pled.

Certification under CMA Civ. Practice Standard 7.1D(a):  On December 14, 2015, counsel for Defendants / Relief Defendants conferred with counsel for the Commission about the deficiencies described in this motion.  The Commission's counsel disagrees with the this motion and the relief sought herein.

## THE COMMISSION'S COMPLAINT

### A.    The Complaint's Factual Allegations

Rubicon, formed in May 2006, is a private equity firm.  (Compl. ¶ 17.)  Lester managed Rubicon for part of the time applicable to the Commission's claims.  (*Cf. id.* ¶ 18.)  Rubicon has managed a variety of companies – many of which are not parties to this lawsuit – including CFI, NuPower, and Equity Edge.  (*Id.* ¶ 11.)

CFI was formed in January 2010.  (*Id.* ¶ 3)  As described in its Private Offering

Memorandum ("POM" – attached hereto as Ex. A[1]), CFI was formed to participate in a variety of ventures anticipated to produce cash flow returns.  (Ex. A at 6-12.)  CFI has in fact invested in several such opportunities since its formation.

In July 2010, NuPower was formed and invested in Company A, a start-up renewable energy company.  (Compl. ¶¶ 10, 14.)  In exchange, Company A contracted to pay a "9 percent annual dividend on the shares, payable quarterly, in cash" to NuPower.  (*Id.* ¶ 36.)  Separately, Rubicon contracted to provide consulting services to Company A.  (*Id.* ¶ 39.)  Company A owed a flat fee for the consulting services, which were specifically enumerated in a "Consulting Services Agreement" (attached as Ex. B), subject to adjustment based on Company A's capital.  (Ex. B at 7-9.)

Rubicon also managed Equity Edge and had for years.  (Compl. ¶ 2.)  In January 2006, the Colorado Division of Securities sued Lester and Equity Edge regarding its mobile home investments.  (*Id.* ¶¶ 2, 12.)  A Colorado state court dismissed the Division's fraud claims but found that Lester and others sold unregistered securities in Equity Edge.  (*Id.*)  Rubicon agreed to guarantee Equity Edge's performance (the "Continuing Guarantee"), which the Division separately ordered Lester to do before reapplying for a Colorado investment adviser license.  (*Id.* ¶¶ 12, 42.)

Complying with the Continuing Guarantee, Rubicon transferred ownership of NuPower to Equity Edge.  (*Id.* ¶¶ 42, 45.)  To diversify CFI's investments and allow it to

---

[1] Two exhibits attached to this motion (Exhibit A, CFI's Private Offering Memorandum, and Exhibit B, a consulting agreement between Rubicon and Company A) were relied upon and incorporated by reference in the Complaint, are of undisputed authenticity, and are central to the Claims.  They can be considered with this motion without converting it to one for summary judgment.  *See S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1191, 1217 (D.N.M. 2013).  Ex. C is a chart of the Complaint's claims.

benefit from the anticipated cash flow from Company A's quarterly cash dividend payments, In October 2010 CFI purchased a 50% interest in NuPower from Equity Edge for $2.8 million, payable over four years.  (*Id.* ¶¶ 46, 48.)  Unfortunately, to date, Company A (and thus NuPower) has not provided the anticipated returns.[2]  (*Id.* ¶ 58.)

### B.   The Complaint's Three Categories of Claims

The Complaint alleges a hodgepodge of seventeen different claims for relief, each involving differing statutes, theories, and subsets of the parties.  Parsing through this unnecessarily complex pleading, the Complaint appears to allege three different categories of Claims.  Defendants' charts attached at Ex. C endeavor to clarify the Claims within each category.  In brief:

First, the Complaint alleges that CFI, Rubicon, and Lester committed securities fraud in violation of the Exchange Act, Securities Act, and Advisers Act (Claims 1-11).  The Complaint alleges that CFI's POM contained three misstatements or omissions (Claims 3, 6, 8, 10), for which Rubicon or Lester are also liable (Claims 4-11).  (Ex. C, chart #1).  It alleges that Rubicon and Lester engaged in two schemes to defraud (Claims 1, 2, 8-11).  (Ex. C, chart #2.)  And it seeks equitable disgorgement from Equity Edge, due to CFI's purchase of an interest in NuPower from Equity Edge (Claim 17).

Second, the Complaint alleges that Rubicon and Lester failed to register as brokers in violation of the Exchange Act, based on the business consulting agreement with Company A (Claims 15-16).  (Ex. C, chart #3.)

Third, the Complaint alleges that CFI, NuPower, Rubicon, and Lester sold

---

[2] In contrast, CFI's other cash flow-producing assets performed more favorably. The Complaint does not allege any wrongdoing with these acquisitions.  Rather, it cherry-picks CFI's least successful asset to date and alleges fraud and other violations.

unregistered securities, and thus that Rubicon and Lester are also liable for CFI's and NuPower's alleged failure to register as investment companies, in violation of the Securities Act and Investment Company Act (Claims 12-14).  (Ex. C, chart #4.)

For the reasons detailed below, Defendants and Relief Defendants move to dismiss all of the Claims alleged in the Complaint.

## THE COMPLAINT MUST SATISFY HEIGHTENED PLEADING STANDARDS

Under Fed. R. Civ. P. 12(b)(6), the Complaint should be dismissed if it fails to state a claim upon which relief can be granted.  The sufficiency of the Complaint's allegations are measured under two stringent pleading standards.

First, under Rule 8(a), the Complaint must contain detailed "well-pleaded factual allegations" that "plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court may disregard the Complaint's "conclusory allegations" and legal conclusions – it need only accept "as true all well-pleaded facts." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998).

Second, the fraud claims must be pled in accordance with Rule 9(b), which provides that the Complaint "must state *with particularity* the circumstances constituting fraud."  Fed. R. Civ. P. 9(b) (emphasis added).  In other words, the Complaint must plead with particularity facts alleging "what is false or misleading about a statement, and why it is false." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir. 1997).

## ARGUMENT

The Complaint should be dismissed for failing to satisfy these heightened

pleading standards.  The entire Complaint should be dismissed because it is an impermissible shotgun pleading.  Moreover, the Complaint fails to satisfy the stringent pleading requirements applicable to the securities fraud claims (Claims 1-11, 17) and to the broker registration claims (Claims 15-16).  The securities fraud claims suffer from multiple deficiencies revealing that the Commission's entire fraud case is based on selective quotes and hindsight.  The broker registration claims should be dismissed because the Complaint mischaracterizes the fees due under a consulting agreement.

## I.      THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING

The Complaint employs "an improper pleading format for a complex securities action" because it "makes no attempt to lay out which conduct constitutes the violations alleged."  *S.E.C. v. Fraser*, No. CV-09-00443-PHX-GMA, 2009 WL 2450508, *14 (D. Ariz. August 11, 2009).  It alleges 97 paragraphs of alleged "facts," all of which are incorporated into each of the 17 different "claims for relief," each of which is stated under different statutes, involve different theories, and against different subsets of defendants.  Courts "strongly criticize[] such use of 'shotgun pleading,' by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors."  *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12- cv-00463-CMA-BNB, 2013 WL 212640, * 7 (D. Colo. Jan. 18, 2013).  Defendants and the Court should not be forced to guess which of the 97 paragraphs of "facts" support which of the 17 claims.  The Complaint thus should be dismissed in its entirety.

## II.     THE COMPLAINT FAILS TO PLEAD SECURITIES FRAUD (CLAIMS 1-11, 17)

### A.      The Complaint Fails to Plead a Material Misstatement or Omission

Claims 3, 6, 8, and 10 of the Complaint allege that CFI, Rubicon, and Lester

violated provisions of the Exchange Act, Securities Act, and Advisers Act due to three alleged misstatements or omissions in CFI's POM.  (*See* Ex. C, Chart #1.)  "Mere conclusory allegations of falsity are insufficient."  *Grossman*, 120 F.3d at 1124; Fed. R. Civ. P. 9(b).  Instead, to state these securities fraud Claims, the Complaint must allege particular facts showing each defendant "made an untrue statement of material fact, or failed to state a material fact necessary to make the statements that were made not misleading."  *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1196 (D.N.M. 2013).  The statement "must not merely be false now; rather, it must have been false at the time that the document containing it was created."  *Id*.  The Complaint fails to satisfy these burdens for any of the three challenged statements in CFI's POM.

1.    *The Complaint fails to allege falsity for: "As of the date of this Memorandum, the Manager has not identified a particular operating business in which to invest."*

The Complaint alleges that CFI's POM falsely "represented that Rubicon had 'not identified a particular operating business in which to invest'…because by approximately October 26, 2010, CFI had purchased from Equity Edge a 50% 'investment' in NuPower for $2.8 million."  (Compl. ¶ 67.)  The Complaint lacks particular facts alleging that this statement was untrue or misleading when made.

In truth, CFI's POM actually disclosed that:

> **As of the date of this Memorandum**, the Manager has not identified a particular operating business in which to invest.  However, industries in which the Fund will likely invest include real estate, oil and gas, and ***alternative/renewable energy***.

(Ex. A at 10 (emphasis added).)  The POM is prominently dated January 1, 2010 on its cover and expressly discloses that "THIS MEMORANDUM SPEAKS AS OF DATE

HEREOF [January 1, 2010]."  (Ex. A at iii (formatting in original).)

The Complaint does not allege that CFI's Manager (Rubicon) actually had identified a particular operating business in which to invest by January 1, 2010.  Rather, the Complaint alleges the falsity of this statement based solely on CFI's later purchase of a 50% share of NuPower in October 2010.  The Tenth Circuit has repeatedly rejected such attempts to plead "fraud by hindsight."  *See Grossman,* 120 F.3d at 1123-24; *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1260 (10th Cir. 2001).

Even after the October 2010 NuPower transaction between CFI and Equity Edge, CFI's POM remained accurate.  As stated, the POM expressly disclosed that it spoke only "as of the date hereof" (January 2010).  (Ex. A at iii (emphasis omitted).)  And it further disclosed that "[n]either the subsequent delivery of this memorandum nor any sale of securities shall be deemed a representation that there has been no change in the affairs, prospects or attributes of the fund since the date hereof."  (*Id.*)  Moreover, CFI did exactly what it promised in the POM – it invested in an "alternative/renewable energy" company, Company A, through NuPower.  (Ex. A at 10.)

The Complaint appears to allege that CFI, Rubicon, and Lester had some duty to update the POM, but the Tenth Circuit has declined to adopt any such duty.  *See Grossman*, 120 F.3d at 1125.  For good reason: "that circumstances subsequently change cannot render a historical statement false or misleading."  *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331-32 (7th Cir. 1995) (rejecting duty to update).

> 2.   *The Complaint fails to allege falsity for: "Generally, the Fund will seek to provide Investors with a market-competitive rate of return by creating or acquiring cash flow-producing assets."*

The Complaint alleges that CFI's POM falsely "represented that CFI would invest

in 'cash flow-producing assets.'" (Compl. ¶ 69.)  The Complaint alleges falsity because: (a) "by approximately October 26, 2010, CFI had purchased from Equity Edge a 50% 'investment' in NuPower, which held only one asset: an investment in Company A, a development stage company with no revenues or operating history"; and (b) "new CFI investor funds were frequently used to make payments to early stage investors rather than to make investments in 'cash flow-producing assets.'" (*Id.* ¶¶ 69-70.)  Again, the Complaint's particular allegations are insufficient to allege the falsity of this statement.

The POM's actual statement (quoted in the heading to this subsection) is forward-looking.  The Complaint thus must allege specific facts showing that CFI, Rubicon, or Lester did not "reasonably believe or were reckless in believing" it at the time (January 1, 2010).  *S.E.C. v. St. Anselm Expl. Co.*, 936 F. Supp. 2d 1281, 1297 (D. Colo. 2013).  The Complaint lacks factual allegations that – in January 2010 – CFI, Rubicon, or Lester did not reasonably believe, or were reckless in believing, that CFI would seek to provide returns with cash flow-producing assets.  Instead, the Complaint again relies solely on later-occurring events – the October 2010 NuPower transaction and later alleged misuses of investor funds.  (Compl. ¶¶ 69-70.)  Yet again it pleads only rejected fraud by hindsight.  *See Grossman,* 120 F.3d at 1123-24.

Moreover, the Complaint lacks particular facts alleging that NuPower, and its underlying holding Company A, was *not* a cash flow-producing asset.  Quite the opposite.  The Complaint expressly concedes that NuPower's investment in Company A appeared to be cash flow-producing at the time because Company A contracted to pay "NuPower a 9 percent annual dividend on the shares, payable quarterly, in cash."

(Compl. ¶ 36.)  CFI thus did "seek to provide" returns by acquiring "cash-flow producing assets," as disclosed in its POM.  (Ex. A at 6.)

That Company A (and thus NuPower) lacked a proven track record at the time is irrelevant: that is a risk of any start-up venture.  (Compl. ¶ 69.)  The POM includes over 15 pages warning of the speculative nature of CFI and its business activities, along with numerous other enumerated risks.  (Ex. A at ii-v, 15-27.)  Indeed, the Complaint ignores CFI's multiple other assets that to date have performed more favorably.  The federal securities laws are not results-oriented investment regulations.

3.    *The Complaint fails to allege falsity for: "Any transaction between the Fund and any Affiliate will be conducted on an arms-length basis, at fair market value."*

The Complaint alleges that CFI's POM falsely represented that "'[a]ny transaction between [CFI] and any Affiliate will be conducted on an arms-length basis, at fair market value.'"  (Compl. ¶ 72.)  The Complaint alleges falsity because CFI's acquisition of 50% of NuPower from Equity Edge "was neither on an arms-length basis, nor at a fair market value.  Rather, the price was simply unilaterally set by Lester."  (*Id.*)[3]  The Complaint, however, insufficiently relies on "[m]ere conclusory allegations," not well-pled facts showing falsity.  *Grossman*, 120 F.3d at 1124.

First, the Complaint fails to allege particular facts explaining why the NuPower transaction was not on an "arms' length basis."[4]  It alleges that Rubicon and Lester "failed to disclose the inherent actual and potential conflicts of interest implicated by

---

[3] This statement could not have been false between January and October 2010 because the NuPower transaction did not occur until October 26, 2010.  (Compl. ¶ 46.)

[4] "A transaction between two parties, however closely related they may be [can be] conducted as if the parties were strangers, so that no conflict of interest arises."  Black's Law Dictionary (10th ed. 2014) (defining "Arm's Length Transaction").

favoring one fund they managed (Equity Edge) over another (CFI)."  (Compl. ¶ 75.)

The Complaint ignores that CFI's POM did *disclose* the actual and potential conflicts

inherent in a transaction with Equity Edge.  Specifically, the POM fully disclosed:

- "The Fund [CFI] may do business with certain Affiliates.  To satisfy the objectives of the Fund, the Manager, in its sole and absolute discretion, may cause the Fund to engage in financial transactions involving entities that are directly or indirectly owned by the Manager."  (Ex. A at 15.)

- "[Rubicon]  has previously executed a Continuing Guarantee Agreement in favor of [Equity Edge] and their respective investors. Thus, the financial resources of [Rubicon and its affiliates] may be called upon to satisfy contingent liabilities related to [Equity Edge]. In such a case, the resources of [Rubicon] could be significantly depleted, which could negatively impact the Fund."  (*Id.* at 17.)

- "[I]n any such transaction [between CFI and an Affiliate], the Affiliate may realize a profit.  Thus, there is a potential financial benefit to the Affiliate, which could be an incentive for the Manager to encourage potential Investors to invest in the Fund."  (*Id.* at 15.)

Because the POM "plainly stated" the actual and potential conflicts of interest, they

cannot support the Complaint's claims of fraud.  *St. Anselm*, 936 F. Supp. 2d at 1294.

Second, the Complaint fails to allege particular facts explaining why the NuPower

transaction was not at "fair market value."  Fair market value is nothing more than a

"price that a seller is willing to accept and a buyer is willing to pay on the open market

and in an arm's-length transaction."  Black's Law Dictionary (10th ed. 2014) (defining

"Fair Market Value").  Here, this occurred at the $2.8 million amount that Equity Edge

agreed to accept and CFI was willing to pay.  (Compl. ¶ 46.)

The Complaint alleges that Lester "has no education or training in business

valuation techniques," used "back-of-the envelope calculations and erroneous personal

beliefs regarding Company A's possible success," "did not follow any accepted

valuation methodology," and should have "obtain[ed] an independent, third-party

valuation." (*Id.* ¶ 73-74.)  Even accepting these allegations as true, the Complaint is devoid of particular facts demonstrating that the price derived by Lester's practices was *not* a plausible fair market value.  The Commission asks this Court to infer that the alleged conflicts, which were disclosed, render the price paid by CFI unacceptable and fraudulent.  Such inferences, however, cannot support a claim for securities fraud. *See St. Anselm*, 936 F. Supp. 2d at 1294.

The Complaint alleges that Company A was "a development stage company with no revenues or operating history."  (Compl. ¶ 69.)  Yet in October 2010, when the transaction occurred, Company A (and thus NuPower) had contracted to pay quarterly cash dividends – any potential misfortune lay unforeseen in the future.  (*Id.* ¶ 36.)  The Complaint therefore also fails to allege that CFI misrepresented that the NuPower transaction occurred at "fair market value."

In sum, Claims 3, 6, 8, and 10 should be dismissed against CFI, Rubicon, and Lester because the Complaint fails to allege any material misstatements or omissions.[5]

---

[5] Count 6 should be dismissed as stated against Rubicon and Lester for two additional reasons.  First, they did not make any of the challenged statements.  All of the statements occurred in CFI's offering memorandum; thus CFI "made" them – not Rubicon or Lester  *See Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011) (Section 10(b) and Rule 10b-5(b) limited to those who "made" misstatements); *S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 345 (S.D.N.Y. 2011) (interpreting Section 17(a)(2) coextensively with Section 10(b) and Rule 10b-5(b)).

Second, the Complaint fails to allege that Rubicon or Lester received money from CFI due to the alleged fraud.  *See S.E.C. v. Coddington*, No. 13-cv-03363-CMA-KMT, 2015 WL 1401679, at *7–8 (D. Colo. Mar. 23, 2015) (liability under Section 17(a)(2) requires "that the defendants *directly or indirectly* obtained money or property…") (emphasis original); (Compl. ¶ 53 (alleging only that Lester was *entitled* to receive money from Rubicon) and ¶¶ 30-31 (alleging only that Rubicon *may* receive payments from CFI).)

**B.     The Complaint Fails to Plead a Scheme to Defraud**

Claims 1, 2, 8, and 10 of the Complaint allege that Rubicon and Lester violated

provisions of the Exchange Act, Securities Act, and Advisers Act based on two alleged

schemes to defraud.  (*See* Ex. C, Chart #2.)  To plead a fraudulent scheme, the

Complaint must allege particular facts showing that Rubicon and Lester engaged in

fraudulent, deceptive, or manipulative conduct – an "illegitimate, sham, or inherently

deceptive transaction" – beyond the alleged misstatements or omissions.  *St. Anselm*,

936 F. Supp. 2d at 1298-99.  Both alleged schemes should be dismissed because they

merely reiterate the insufficiently pled misrepresentations or omissions Claims.

For its first scheme, the Complaint alleges that Rubicon and Lester engaged in a

fraudulent scheme to "prop up Equity Edge, which was failing, by using a faulty

valuation method to create a faulty valuation for NuPower, and then transferring $2.8

million of CFI investor funds to Equity Edge for the purchase of a 50% interest in

NuPower."  (Compl. ¶ 78(a); *see also id.* ¶¶ 42-49.)

The Complaint, however, labels this transaction as fraudulent without pleading

particular facts about any "inherently deceptive" conduct.  It lacks particular facts to

allege that related entities (CFI and Equity Edge) choosing to co-invest in what then

appeared to be a promising renewable energy start-up that had committed to making

regular quarterly cash dividend payments (Company A, via NuPower) was "inherently

deceptive."  Nor does the Complaint plead particular facts alleging the price that CFI

paid was somehow "inherently deceptive."  And the Complaint fails to plead particular

facts alleging that it was "inherently deceptive" for Rubicon and Lester to comply with

the Continuing Guarantee when it "transferred" NuPower to Equity Edge.  *See St.*

*Anselm*, 936 F. Supp. 2d at 1298-99.

Rather, "[t]his case is not about conduct that is itself deceptive – it is about conduct that *became* [allegedly] deceptive only through" the disclosures in CFI's POM. *S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (emphasis in original).  As discussed above, however, CFI's POM fully disclosed all applicable actual and potential conflicts of interest in NuPower transaction – the Continuing Guarantee, the potential that CFI may enter into transactions with Affiliates (like Equity Edge), and that the Affiliate may profit from the transaction.  (*Supra.* at II(A)(3).)

For its second scheme, the Complaint alleges that Rubicon and Lester solicited "new investments for CFI, while they knew, or were reckless in not knowing, that the investment in NuPower was contrary to CFI's stated investment strategy, and that new investor funds were used to pay interest to earlier stage investors." (Compl. ¶ 78(b); *see also id.* ¶¶ 57-65.)  The Complaint pleads that this scheme was fraudulent solely because the actions were allegedly "contrary to CFI's stated investment strategy" and "contrary to the language of the CFI offering memorandum" (the POM).  (Compl. ¶ 57; *see also id.* at ¶ 78(b).)  The Complaint thus expressly concedes that this second alleged scheme likewise overlaps entirely with the insufficiently alleged misstatement or omission Claims.  *See St. Anselm*, 936 F. Supp. 2d at 1298-99.

The federal securities laws "do[] not permit such legal 'double dipping."  *Id.* at 1299. *St. Anselm* is on point.  The Commission there charged defendants with both misstatements/omissions and scheme claims.  *See* 936 F. Supp. 2d at 1298.  The Commission alleged that defendants misstated the true potential of their company when

informing investors of more attractive terms and additional incentives for new or

renewed notes.  After finding no basis for the misstatement/omission claims, the Court

granted defendants' motion for judgment as a matter of law on the scheme claims

because "[t]he only way in which they might be conceived to be deceptive is by virtue of

the SEC's contention that they bolstered the allegedly false impression created by

defendant's misstatements and omissions."  *Id.* at 1299.  The Complaint here likewise

fails to plead particular facts alleging any "inherently deceptive" activities, separate from

the insufficiently alleged misstatement or omission Claims.

In sum, Claims 1, 2, 8, and 10 should be dismissed against Rubicon and Lester

because the Complaint fails to allege any scheme to defraud.

### C. The Complaint Fails to Plausibly Plead That CFI, Rubicon, or Lester Acted With Any Intent to Defraud, Or Even Negligently

To state Claims 1, 2 (only Section 17(a)(1)), 3, and 8 (only Section 206(1)), the

Complaint must plead that Defendants acted with an intent to defraud – scienter.  The

Complaint thus must allege facts plausibly showing that Defendants acted with either "a

mental state embracing an intent to deceive, manipulate, or defraud," or that they

engaged in reckless "conduct that is an extreme departure from the standards of

ordinary care and which presents a danger of misleading buyers or sellers that is either

known to the defendants or is so obvious that the actor must have been aware of it."

*Fleming Cos.*, 264 F.3d at 1258; *see also Aaron v. S.E.C.*, 446 U.S. 680, 695 (1980).

To state Claims 2 (only Section 17(a)(3)), 6, 8 (only Section 206(2)), and 10, the

Complaint must plead facts plausibly showing that Defendants acted negligently.  The

aiding and abetting claims (Claims 4, 7, 9, and 11) likewise require allegations sufficient

to show that the defendant acted "knowingly or recklessly" under Section 20(e) of the Exchange Act.  To plead the requisite level of intent, "speculation and conclusory allegations will not suffice."  *Goldstone*, 952 F. Supp. 2d at 1194 (citation omitted).

The Complaint, despite the requirements of Fed. R. Civ. P. 8(a) and 9(b), fails to allege a plausible and coherent theory that Defendants acted with the requisite intent. According to the Commission, Lester (through Rubicon), masterminded an elaborate plot to repay Equity Edge investors – as the Continuing Guarantee and a state agency order required – by sharing with CFI an investment in a start-up company that contracted to make regular cash payments, but which Lester apparently somehow foresaw would fail in the future – all the while fully disclosing any actual and potential conflicts of interest and at no gain to himself.  It is not plausible to assume that Defendants embarked on this course.

Alternatively, that Defendants were optimistic about Company A and worked in good faith to both satisfy the Continuing Guarantee and provide continuing cash dividend payments to CFI, but that Company A's (and thus NuPower's) results to date have been disappointing, is far more plausible.

In sum, Claims 1-4 and 6-11 should be dismissed for the additional reason that the Complaint fails to allege that Defendants acted with scienter, or even negligently.

### D.    The Complaint Fails to Plead Secondary or Control Person Liability

Claims 4, 5, 7, 9, and 11 of the Complaint allege that Rubicon and/or Lester aided-and-abetted or acted as control person over the above-discussed securities fraud. Because the Complaint fails to allege primary violations, it necessarily fails to allege these contingent violations.  *See Monetta Fin. Servs., Inc. v. S.E.C.*, 390 F.3d 952, 956

(7th Cir. 2004) (aiding and abetting); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1107-08 (10th Cir. 2003) (control person).  If the Court determines that only some, but not all, of the securities fraud claims asserting primary violations warrant dismissal, then certain of the alleged contingent claims likewise should be dismissed.  Exhibit C clarifies which primary Claims have contingent Claims.

### E.    The Complaint's Advisers Act Claims Also Fail to Plead That Lester or Rubicon Acted as Investment Advisers

Claims 8-11 allege that Rubicon and Lester violated provisions of the Advisers Act. (*See* Ex. C, Charts #1,2.)  The Advisers Act, however, applies solely to entities or individuals that meet the statutory definition of an "investment adviser."  *E.g.*, *Zinn v. Parrish*, 644 F.2d 360, 362–63 (7th Cir. 1981).  Under Section 202(a)(11) of the Advisers Act, an investment adviser is an individual or entity who, for compensation, engages in the business of advising others as to securities investments.

The Complaint fails to sufficiently allege that Rubicon or Lester acted as investment advisers.  First, the Complaint lacks factual allegations pleading that either Rubicon or Lester was in the business of providing investment advice to others.  The Court may disregard the Complaint's "[t]hreadbare recitals of the elements of a cause of action[] supported by mere conclusory statements" contained in ¶¶ 123, 126, and 130. *Goldstone*, 952 F. Supp. 2d at 1190.  And the Complaint's only possible factual allegation about Lester's investment-related activities (Compl. ¶ 20), insufficiently pleads only that his communications about CFI and NuPower were isolated incidents to the main purpose of the relationship – to sell insurance.  *See Zinn*, 644 F.2d at 362-64 (holding allegations of "isolated transactions with a client as an incident to the main

purpose" of the relationship insufficient to plead an investment advisory relationship).

Second, the Complaint fails to allege that Lester received compensation for investment advice, or that Rubicon received any such compensation from CFI.  The Complaint alleges that Rubicon received management fees from NuPower, but not from CFI.  (Compl. ¶ 38.)  And the Complaint alleges only that Lester was *eligible* to receive possible profit distributions from Rubicon.  (*Id.* ¶¶ 12, 53.)  The Complaint does not, however, allege that Rubicon (from CFI) or Lester actually *received* compensation for investment advice, as opposed to other work.

In sum, Claims 8-11 should be dismissed for the additional reason that the Complaint fails to allege that Rubicon or Lester acted as investment advisers.

### F.     The Complaint Fails To Plead Equitable Disgorgement Against Relief Defendant Equity Edge

Claim 17 alleges that Equity Edge was unjustly enriched by receiving payments from CFI for the NuPower transaction.  (Compl. ¶¶ 154-56.)  Because the Complaint fails to allege anything fraudulent in connection with the NuPower transaction, as discussed above, the contingent claim against Relief Defendant Equity Edge should be dismissed. *See, e.g.*, *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 225 (2d Cir. 2010) (for a relief defendant, must show ill-gotten funds and no legitimate claim to those funds).  Because Claim 17 is the only claim stated against the Equity Edge entities, they should be dismissed entirely from this lawsuit.

### III.    THE COMPLAINT FAILS TO PLEAD THAT LESTER AND RUBICON ACTED AS UNREGISTERED BROKERS (CLAIMS 15-16)

Claim 15 alleges that Rubicon and Lester acted as unregistered brokers in violation of Section 15(a) of the Exchange Act because they sold interests in CFI and

NuPower.  (Compl. ¶¶ 90-93, 147-48.)  Claim 16 alleges that Lester is liable as a control person for Rubicon's alleged violation of Section 15(a).  (*Id.* ¶¶ 150-52.)

To plead these claims, the Complaint must allege facts showing that Rubicon and Lester engaged in the business of effecting transactions in securities for the account of others.  *See* Section 15(a)(1) of the Exchange Act.  Courts consider multiple factors when determining whether someone acted as a broker, but the "hallmark of being a broker-dealer" is "transaction-based compensation."  *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1334 (M.D. Fla. 2011).

The Complaint fails to allege that Rubicon or Lester received transaction-based compensation.  It pleads that "Rubicon (owned in part by Lester) received compensation based indirectly on the transactions in securities because of the commission agreement executed by Lester" and with Company A.  (Compl. ¶ 93; *see also id.* ¶¶ 39-41.)

The Complaint mischaracterizes the agreement between Rubicon and Company A.  Although cast as a "commission agreement" in the Complaint, the agreement is actually entitled "Consulting Services Agreement."  (*Compare id.* ¶ 39 *with* Ex. B at 1.) The consulting agreement specifically enumerates the business consulting "[s]ervices to be performed by Consultant" (Rubicon) – notably absent are brokerage services.  (Ex. B. at 7.)  In exchange for the enumerated consulting services, the consulting agreement provides that Company A owed a $10,000 monthly fee to Rubicon, which fee was subject to adjustment roughly based on the magnitude of Company A's growing operations.  (*Id.* at 8.)  Company A further owed reimbursement for expenses, subject to a cap, and the consulting agreement specified the hourly rate at which additional

services would be billed.  (*Id.*)  The Complaint mislabels these payments as commissions and lacks factual allegations showing that the consulting fees were for anything other than the enumerated consulting services.[6]

The Complaint further fails to allege facts indicating that Lester personally received any of part of Company A's payments – the Complaint alleges only that Rubicon received payments from Company A.  (Compl. ¶¶ 39-41, 93.)  Merely alleging Lester's part ownership of Rubicon is insufficient to presume that Lester actually received transaction-based compensation for sales of interests in CFI or NuPower.  *See Kramer*, 778 F. Supp. 2d at 1334-35 (discussing authority).

In sum, the Complaint fails to allege an unregistered broker claim (Claim 15). The control person claim (Claim 16) thus fails as well.  *Adams*, 340 F.3d at 1107-08.

## CONCLUSION

For the foregoing reasons, Defendants and Relief Defendants respectfully request that the Court dismiss the Commission's Complaint with prejudice[7] and grant all other relief to which they may be entitled.

---

[6] Even under the Complaint's mischaracterization of the consulting agreement, "receiving transaction-based compensation…without additional evidence" is insufficient to "qualify as a broker under Section 15(a)."  *Kramer*, 778 F. Supp. 2d at 1334, 1339. The Complaint lacks factual allegations showing that consulting fees were tied to "the business of effecting transactions in securities for the accounts of others."  *Id.* at 1339.

[7] The Commission has had years to investigate this matter and craft its Claims.  It should not be granted yet another opportunity to try and state a claim.

Dated this 15th day of December, 2015.

Respectfully submitted,


*s/ Brian Neil Hoffman*
Matthew J. Smith, #32043
Brian Neil Hoffman, #32999
Jessica J. Smith, #46435
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO  80202
Telephone: (303) 295-8000
Fax: (303) 295-8261
mjsmith@hollandhart.com
bnhoffman@hollandhart.com
jjsmith@hollandhart.com

**Counsel For Defendants and Relief Defendants**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2015, I have caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

> Mark L. Williams
> Danielle Voorhees
> U.S. Securities and Exchange Commission
> Denver Regional Office
> 1961 Stout Street, Suite 1700
> Denver, CO 80294
> (303) 844-1000
>
> **COUNSEL FOR PLAINTIFF**

*s/ Brian Neil Hoffman*

8262163_