IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Case No. 1:15-cv-02301-CMA-MLC**

SECURITIES AND EXCHANGE COMMISSION,

  Plaintiff,

v.

DONALD J. LESTER,
RUBICON ALLIANCE, LLC,
CFI FUND, LLC, and
NUPOWER, LLC,

  Defendants,

EQUITY EDGE PREFERRED INCOME FUND I, LLC,
EQUITY EDGE, LLC, and
EQUITY EDGE COMPANIES, LLC,

  Relief Defendants.

---

**RECEIVER'S MOTION
TO AUTHORIZE FINAL DISTRIBUTIONS TO INVESTOR CLAIMANTS**

---

Cordes & Company, as Receiver in this matter ("Receiver"), through its counsel, Faegre Drinker Biddle & Reath LLP, hereby requests an order pursuant to § 8(L) and § 60 of the Court's July 26, 2017 Order Appointing Receiver [Doc. 86] (the "Receiver Order") authorizing the Receiver to make a final distribution of funds recovered by the Receiver to the investor claimants of the CFI Fund, LLC, ("CFI") and EQUITY EDGE PREFERRED INCOME FUND I, LLC ("EEPI") as provided in **Schedules 5 and 6** hereto and subject to the terms and conditions of this Motion. In support, the Receiver states as follows:

**Certificate of Conferral**:  After conferring with counsel for the Plaintiff, the Securities and Exchange Commission, regarding the relief requested by this motion, undersigned counsel for the Receiver advises that this motion is unopposed by the Plaintiff.

**I.   REQUEST FOR RELIEF**

1. Pursuant to § 8(L), § 55, and § 60 of the Receiver Order, the Receiver requests an order authorizing the Receiver to make a final distribution of proceeds of its Receivership recoveries to the investor claimants of CFI and EEPI as provided in **Schedules 5 and 6** hereto and subject to the terms and conditions of this Motion.

2. Section 8(L) of the Receiver Order provides that the Receiver shall have the powers and duties '[t]o take such other action as may be approved by this Court." Section 55 of the Receiver Order identifies that if the Receiver deems it appropriate, then the Receiver shall file a liquidation plan.  While the Receiver has not filed a formal Liquidation Plan per se, the Receiver has identified how and when the interests and assets of the Receivership have been liquidated as part of its periodic Receiver reports.  At this time, and as discussed in further detail below, the Receiver has liquidated all the significant interests and assets of the Receivership Estate and is, thus, now in a position to provide final distributions to the investor claimants and conclude this Receivership.  Section 60 of the Receiver Order provides that "[t]he Receiver may from time-to-time request that the Court enter additional orders to supplement, clarify or amend this Order, upon notice in accordance with this Order.

**II.    THE RECEIVER HAS OBTAINED SUBSTANTIAL RECOVERIES AND CAUSE EXISTS TO DISTRIBUTE THE REMAINDER OF SUCH RECOVERIES TO CFI AND EEPI INVESTOR CLAIMANTS.**

3.      Pursuant to the Receiver Order, the Court appointed the Receiver on July 26, 2017.

4.      The Receiver Order directed the Receiver to take exclusive jurisdiction and possession of the assets of the Receivership Defendants. Receiver Order, § 1.

5.      CFI is a Receivership Defendant and EEPI is a Receivership Relief Defendant.  As noted in the Receiver's quarterly reports, the Receiver has been methodically liquidating the assets and entities under its control to maximize the value of such assets and entities for the benefit of the claimants of the Receivership Estate.

6.      During the first quarter of 2020, the Receiver recovered substantial proceeds attributable to both CFI and EEPI from the sale of a significant student housing project in Colorado Springs owned by an entity in which both CFI and EEPI owned a member interest.  Additionally, during the first quarter of 2020, the Receiver obtained an additional recovery in the CFI fund from the successful settlement of a dispute involving a promissory note held by CFI.  The proceeds of these recoveries were deposited into the Receiver's separate bank accounts for each fund.

7.      At that time, the Receiver believed it would be in the best interest of the Receivership Estate and the various investor claimants if the Court authorized the Receiver to make an interim distribution of a portion of the funds recovered by the Receivership to the investor claimants of each fund.  Accordingly, in July 2020, the Receiver filed a motion to make an interim disbursement to the claimants.  This motion

3

sought the authorization for the Receiver to distribution $1,000,000 to the CFI investor claimants and $1,000,000 to the EEPI investor claimants, respectively. This motion was granted by this Court on August 25, 2020.

8. Upon receipt of that Court Order, the Receiver disbursed such funds to each of the CFI and EEPI investor claimants, respectively, over the subsequent (roughly) sixteen months. Most of these disbursements were made by the end of 2020; however, certain disbursements were not made until later in 2021 as it took the Receiver considerable time to find many of the claimants and/or to deal with certain extraordinary circumstances, such as the fact that certain claimants had passed away, had changed addresses, had changed custodians for their IRA accounts, etc., Additionally, the Receiver notes that the Receiver actually distributed $1,004,002 in total to the CFI investor claimants as there was one CFI claimant who informally (i.e. the claimant did not formally file an objection or motion with this Court) petitioned the Receiver to acknowledge that the Receiver's identification of their individual claim was incorrectly accumulated and summarized based upon the Defendants books and records. The Receiver reviewed the new supporting documentation provided by the individual claimant and agreed with their identified amounts owed, which slightly increased the overall interim disbursement of funds related to CFI.

9. Subsequent to the interim distribution, the Receiver has been diligently working to liquidate the remaining significant assets and interests of the Receivership Estate. These efforts have been identified, discussed, and reported in the periodic Receiver reports filed with the Court. Up until this point in time, the two remaining

significant Receivership Estate interests include A) CR Towers, LLLP, ("CR Towers") and B) Thunderwolves Apartments, LLC. ("Thunderwolves").

10. EEPI is the general partner for CR Towers and holds a 10% interest in this entity. CR Towers owns four undeveloped lots on which a cell tower currently resides. The other 90% of CR Towers is owned by three separate individual investors. In addition to the undeveloped lots, CR Towers holds a debt certificate from the CFI Fund and a separate debt certificate from EEPI. Thus, CR Towers participates in any distributions of funds from these two receivership related entities. The undeveloped lots and the two debt certificates make up the majority (besides some nominal cash) of the assets held by CR Towers. As described in detail in previous Receiver reports, the undeveloped lots held by CR Towers are encumbered with very long-term leases to Verizon Wireless and T-Mobile that extend out to 2050, presuming the lease options are exercised by those tenants. Further, the income streams from both the T-Mobile and Verizon leases were sold to third parties prior to the Receivership. Thus, there is no cash flow to CR Towers other than any funds distributed to it by CFI and EEPI, respectively, relative to the individual debt certificates held. Additionally, CR Towers is required to fund some annual maintenance costs to control the weeds/landscaping at the lots, as well as pay the annual property taxes.

11. The Receiver initiated communications with the owners of the other 90% partnership interests to explore possible strategies to generate potential proceeds for EEPI's 10% interest in CR Towers and/or the undeveloped lots. The Receiver has also held some very preliminary discussions with an HOA representative regarding the

possible disposition of the CR Towers ownership in the undeveloped lots to the HOA. The other investors holding the 90% interest in CR Towers have represented to the Receiver that they have no interest in acquiring EEPI's 10% interest. Additionally, in early 2021, the Receiver's attorney obtained a title report from Fidelity National Title Insurance Company. This title report noted several encumbrances identifying Colorado East Bank & Trust as a beneficiary under various loan agreements by FMI Cuchares Ranch, LLC. These encumbrances total approximately $968,000. While the Receiver does not believe that these identified encumbrances are valid against the undeveloped lots, these encumbrances would need to be addressed and released if CR Towers was going to attempt to sell the undeveloped lots. Obtaining appropriate releases from Colorado East Bank & Trust would likely require some minimal time and some legal fees.

12. Given that EEPI only holds a 10% interest in CR Towers, there is no operating cash flow for the entity, and there appears to be limited net value to the real estate assets held (especially given the professional fees likely to be involved to realize any such value), the Receiver has spent limited time and resources dealing with this situation and the underlying assets. While the Receiver believes a sale of the undeveloped lots is possible, potentially to the HOA or another third-party, the Receiver does not believe that the potential sales proceeds, after the Receiver related costs and professional fees, along with the risks related to a potential sale, warrants the Receiver involvement in a potential transaction because there is very likely little economic value to the Receivership Estate. Consequently, given the current economics of CR Towers, the Receiver anticipates paying the existing CR Towers obligations related to the

Receivership period and then abandoning the Receiver's interest so that the overall Receivership Estate can be closed in an expeditious manner.

      13.     ThunderWolves was a student housing apartment project located in Pueblo, Colorado abutting the campus of Colorado State University - Pueblo ("CSU Pueblo").  The development, which is not completely built out, was designed to be built in various phases with a total capacity of 568 beds upon completion.  The completed student housing units were encumbered by a deed of trust securing a loan in the original principal amount of $10,550,000.00.  The future development site for additional units was encumbered by a deed of trust securing a loan in the original principal amount of $2,108,382.00.  Like the other Lester-related entities, this entity was very highly leveraged.  Additionally, CSU Pueblo has struggled from a student enrollment perspective over the last several years.  Thus, increased demand for student housing in this market had not materialized in recent years, which is why ThunderWolves has not completed the planned future stages of the remaining development.  Occupancy at the project for the 2019/2020 school year was around 82%, while the occupancy level for the 2020/2021 Covid19-related school year declined slightly to around 80%.  The cash flow for the property (with occupancy in the 80% range) generally resulted in breakeven to small operating profits from year to year.  Other than servicing the significant debt load and being able to provide some annual capital improvements to the existing buildings, the property had not generated sufficient profit and cash to make any distributions to members over the past several years.  CFI owns 43% of ThunderWolves.  The Thunderwolves entity is controlled by Pannunzio, Inc., as the majority owner and managing member.  Thus, the Receiver has had no control or

authority to direct, manage or liquidate the entity.

14. In the spring of 2021, the Receiver held various discussions with Mr. Pannunzio regarding the possibility of selling the underlying student housing project and then liquidating the LLC. Ultimately, Mr. Pannunzio was agreeable to selling the property if an appropriate sales price could be achieved. In late April 2021, ThunderWolves retained a qualified commercial real estate brokerage firm to market the property for possible sale. After marketing efforts by the brokerage firm, a purchase and sale agreement was entered into with a third-party out of Fort Collins. The closing occurred and the property was sold in mid-September 2021. The purchaser of the property had ninety (90) days to finalize the buyer-seller prorations related to rents, utilities, and other transition related amounts. It took Mr. Pannunzio and his staff longer than 90 days to negotiate and settle various buyer raised issues involving the final prorations, which were not resolved until the first part of 2022. Subsequent to the closing, Thunderwolves disbursed $2 million to the CFI Fund as a preliminary liquidation distribution. In late March 2022, Thunderwolves made a final liquidation distribution totaling $72,860 to the CFI Fund after the final buy-sale prorations with the buyer were resolved and the entity was able to perform a final liquidation accounting for the Thunderwolves entity.

15. During the Receiver's review of Thunderwolves, it was noted that the original investment in Thunderwolves was made and held by EEPI. The original investment by EEPI was nominal. Later, according to the books and records, EEPI conveyed its interest in Thunderwolves to CFI in exchange for payments totaling $1.5 million during 2010, which represented a tremendous return to EEPI at that time.

Accordingly, all the Thunderwolves liquidation proceeds received as part of the sale of the property belong to CFI.  In addition to the liquidation proceeds, we also noted that CFI received payments from Thunderwolves totaling approximately $538,000 during the years 2010 through 2017.  The Receiver reviewed the accounting related to the sale of the property, as well as the accounting related to the liquidation proceeds and found them to be reasonable and appropriate.

16. Given the abandonment of CR Towers and the liquidation of Thunderwolves, there are no further assets and interests (besides cash) within the Receivership Estate.  Accordingly, it is time for the Receiver to wrap-up and complete the Receivership Estate and make final distributions to the investor claimants and fund/pay any remaining Receivership Estate administrative expenses.

17. Furthermore, on March 1, 2022, the Receiver issued letters to vendors and other third parties of the Receivership Estate soliciting any and all potential administrative claims that may exist against the Receivership Estate.  This claim solicitation letter stated a bar date of March 25, 2022, for parties to file any such claims.  The Receiver also provided a similar notice in the local Colorado Springs newspapers during this time period.  The identified bar date has since passed and no further administrative claims were identified against the Receivership Estate, except for those claims that have already been reserved for as part of the final accounting that is included within the attached schedules to this motion.

### III. THE PROPOSED FINAL DISTRIBUTION

#### A. PROPOSED AMOUNTS TO BE DISBURSED & FINAL ALLOCATION OF RECEIVERSHIP EXPENSES

17. As noted above, the Receiver has deposited the significant recoveries attributable to the Thunderwolves entity liquidation into the CFI separate bank account. Additionally, there are some remaining funds in the EEPI separate bank account from the liquidation of previous interests/assets. As set forth on **Schedule 1** and **Schedule 2**, the Receiver currently holds $2,339,477 million (combined) in its CFI and EEPI bank accounts, with most of these monies belonging to the CFI Fund.

18. At this time, the Receiver proposes to make a final distribution to the CFI Fund claimants totaling $2,156,522. This amount primarily relates to the proceeds received from the Thunderwolves investment noted above, as well as the remaining funds from previous asset collections, less the final costs and expenses of the Receivership Estate. Additionally, the Receiver proposes to make a final distribution to the investor claimants of EEPI totaling $120,005. These funds represent the remaining reserve funds in the EEPI account from previously collected assets/interests less EEPI's share of the remaining Receivership fees and costs. Refer to **Schedule 2**.

14. In generating this proposed final distribution, the Receiver has made certain final accounting adjustments between the CFI and EEPI accounts related to past Receivership expenses. During the course of the Receivership, the Receiver has ordinarily paid certain Receivership expenses (e.g. legal fees, website costs, certain Receiver fees, etc.) primarily out of the CFI bank account. At the time, this was done for ease and convenience. However, most of the time, the CFI and EEPI funds have

benefitted equally from the various services that generated these costs and such costs, from the Receiver's perspective, should be equally allocable to both entities. Accordingly, the Receiver made appropriate adjustments to equalize these costs between the two funds since the CFI Fund essentially "wrote most of the checks". After those adjustments were made and that process was completed, the Receiver then re-evaluated certain costs and expenses, namely the Receiver fees and the Receiver's legal fees because there was considerable time spent by the Receiver and its counsel on specific activities that related to two assets/interests (i.e. the collection of the Dr. Brady note and Thunderwolves situation) that only benefited the CFI Fund. These costs were separately identified and then completely allocated back to the CFI Fund since the CFI Fund received all the benefits related to those specific costs. The reallocation of the various costs resulted in $65,592 in expenses being shifted from CFI to EEPI so that each fund would appropriately bear costs that related to services rendered and value received at the individual fund level. These allocations and costs are detailed at **Schedule 3** and are summarized at **Schedule 2**.

15. After accumulating the current cash amounts and apportioning the past costs as described above, the Receiver then prepared an estimate for the remaining professional fees and costs that are both currently outstanding at this time, as well as an estimate of the amounts that will be necessary to complete the final distributions to the claimants, wrap-up the Receivership Estate and provide the final reporting of the Receivership Estate to the Court and the parties. These estimates are based upon the anticipated time it will take to complete the above final objectives, presuming there are no

unusual or extraordinary issues or objections to the Receiver's final motions and reports, along with additional costs that the Receiver anticipates it will incur related to some final legal fees, website maintenance costs, storage costs, shredding costs and other small miscellaneous costs.  These outstanding amounts and estimated future costs are identified at **Schedule 4** and are summarized at **Schedule 2**.  In the event that these estimated future amounts are insufficient to fund the full amount of the actual costs incurred then the Receiver will absorb such costs on its own.  In the event that these estimated future amounts are more than the actual costs incurred, then the Receiver will remit any remaining amounts to the Plaintiff in this matter and allow it to liquidate such amounts as it sees fit.  The Receiver anticipates that any remaining amounts either way would likely be nominal.

B. **ASSETS AND CLAIMS OF CFI AND EEPI AS SEPARATE ENTITIES**

16.   As articulated in the Interim Distribution Motion, the Receiver has separately maintained the treatment of CFI and EEPI as separate and distinct entities and has calculated distributions based on the respective assets and claims against the two separate entities.  Such treatment is appropriate as the Defendants' books and records separately identify the assets and investments made by each of the two entities and the proceeds recovered from these assets by the Receiver have been separately attributed to the appropriate entity.  In addition and as described above, the Receiver has tracked and accounted for both cash receipts and cash disbursements related to each of the two funds, CFI and EEPI, respectively, during the Receivership proceedings. Maintaining separate accounting for the assets and claims related to these entities has

been further warranted by the fact that investors made their investments in a specific entity/fund rather than a consolidation of entities and the expectations of investors should be protected and preserved to the greatest extent possible.

17. The bulk of the funds that the Receiver recently recovered are derived from CFI's sole investment in Thunderwolves. Because CFI has fewer investor claimants than EEPI and the debt amounts outstanding for CFI are considerably less than those amounts related to EEPI, CFI investors are projected to receive a larger percentage return on their individual claims than the EEPI investors. Under the Receiver's proposed final distribution, the CFI investor claimants will receive a partial recovery of principal of approximately 43%. Given that the CFI Fund claimants previously received approximately 20% in the interim distribution process, the CFI Fund claimant's total recovery will approximate 63%. Conversely, there are significantly more investors in the EEPI Fund, and the overall investment value in that fund is considerably more than what was in the CFI Fund. The proposed final distribution to the EEPI Fund claimants is relatively nominal because the EEPI Fund had no interest in Thunderwolves, it had a nominal interest in CR Towers (which has a nominal value) and what remains to be distributed is simply the reserve funds being held by the Receiver. The EEPI investor claimants received an approximate 7.4% recovery from their interim disbursement and will receive an approximate 0.89% from this final proposed disbursement, which equates to an overall recovery of 8.3%. *See* **Schedules 5 and 6**.

### C. PROPOSED FINAL CALCULATION OF INVESTOR CLAIMS AND FINAL DISTRIBUTIONS ON INVESTOR CLAIMS

18. In calculating the proposed final distributions to the investor claimants of the respective funds set forth in **Schedules 5 and 6**, the Receiver has determined that the simplest, fastest, and most equitable method to make the final distribution is to calculate the amount of distributions based upon the outstanding unpaid principal balance owed to the investor claimants of the CFI and EEPI funds. This method is the same method that the Receiver used to determine the interim distributions, which was allowed and granted by the Court at that time.

19. As noted in prior Receiver reports, the Receiver has accumulated the amounts related to the investor funds and prepared schedules for investments made in the Defendant Entities and the Relief Defendant Entities based upon the available books and records provided by the Defendants. Such schedules include the identity of the investor, the date and amount of the original investment, and the payment of principal and interest that has been made to the investors. Along with these detailed schedules, the Receiver has gathered the available investor subscription agreements, promissory notes and debt certificates. These documents and schedules have been made available to the individual investors on a secure website established by the Receiver. The Receiver has relied on these documents to determine the proposed final distribution to the individual investor claimants of the CFI and EEPI funds.

20. To date, the Receiver has not received any information or documentation indicating that the balances identified by the Receiver are inaccurate or incomplete, except for the one instance noted above with respect to the CFI Fund, which has

14

subsequently been corrected and adjusted based upon the appropriate documentation provided by the investor claimant.

### D.   OTHER CONSIDERATIONS RELATING TO CLAIMS

22.   In calculating the final distributions to the investor claimants of the respective funds set forth in **Schedules 5 and 6**, the Receiver has considered whether to assert claims against any investor claimants to claw back payments of principal or interest that the Defendants made to investors prior to the Receivership proceeding. As articulated in the Interim Distribution Motion, in some circumstances, a Receiver might pursue the return of payments made to investors to reconcile inequitable treatment and recoveries among similarly situated investors. Having reviewed the available Defendants books and records in this proceeding, the Receiver has not pursued claims against investors that may have received interest or principal payments prior to the Receivership proceeding for several reasons. The Receiver determined that the pursuit of such claims would not be in the best interests of the Receivership Estate or its beneficiaries because (1) the pre-Receivership amounts paid to individual investors does not appear to be significant or grossly inequitable among the investors, (2) such claw back claims will be subject to potentially valid defenses, and (3) the litigation costs that the Receivership estate would incur to prosecute such claims could exceed the potentially minimal and speculative recoveries on such claims. Thus, it is the Receiver's continued belief that any anticipated benefits from the pursuit of these potential claw back actions would not justify the likely costs necessary to achieve them.

23. Presuming that the proposed Motion and the accompanying proposed order are granted by the Court, then the Receiver anticipates making the required distributions to the investor claimants as identified herein and in the attached schedules. Once those distributions are made, then the Receiver anticipates filing a final report, a final fee application and taking any other measures to appropriately wrap-up and terminate this Receivership, absent further instruction from the Court.

WHEREFORE, pursuant to § 8(L) and § 60 of the Receiver Order [Doc. 86], the Receiver requests the entry of an order authorizing the Receiver to make final distributions to the investor claimants as identified on **Schedules 5 and 6** subject to the terms and conditions of this Motion**.**

Respectfully submitted this 31st day of May, 2022.

FAEGRE DRINKER BIDDLE & REATH LLP

*s/ Bradford E. Dempsey*
Bradford E. Dempsey, #30160
1144 15th Street, Suite 3400
Denver, CO 80202
Telephone: (303) 607-3500
Facsimile: (303) 607-3600
Email: brad.dempsey@faegredrinker.com

*Counsel for Cordes & Company as Receiver for the Estates of Rubicon Alliance, LLC; CFI Fund, LLC; and NuPower, LLC; Relief Defendants Equity Edge Preferred Income Fund I, LLC; Equity Edge, LLC; and Equity Edge Companies, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2022, a copy of the foregoing **RECEIVER'S MOTION TO AUTHORIZE FINAL DISTRIBUTIONS TO INVESTOR CLAIMANTS** was filed with the CM/ECF filing system which will send notification of such filing to the following:

Mark L. Williams, Esq.
U.S. Securities and Exchange Commission
Denver Regional Office
1961 Stout Street, Suite 1700
Denver, CO 80294

*Counsel for Plaintiff*


*Also, via First Class U.S. Mail & Email:*

Mr. Donald J. Lester
8900 Highway 93, Unit A
Golden, Colorado 80403
donaldlester@outlook.com

*Defendant*

*Also, via First Class Mail to the last known addresses of the Investor Claimants set forth on Schedules 4 & 5 hereto.*

                                                     *s/ Bradford E. Dempsey*
                                                     Attorney for the Receiver